CLERK'S OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

JAN 27 2011

BY: JULIA C. DUDLEY, CLERK
/s/ 
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
LYNCHBURG DIVISION

| | |
|---|---|
| SELENA S. DAWSON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 6:09cv057 |
| v. | ) |
| | ) |
| MICHAEL J. ASTRUE, | ) By: Michael F. Urbanski |
| Commissioner of Social Security, | ) United States Magistrate Judge |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Selena S. Dawson ("Dawson") brought this action for review of the Commissioner of Social Security's ("Commissioner") decision denying her claim for disability insurance benefits ("DIB") under the Social Security Act (the "Act"). On appeal, Dawson contends that the Administrative Law Judge ("ALJ") erred by not finding her disabled based on her anxiety and depression and the opinion of her treating Nurse Practitioner ("NP") Juliana Frosch. The Commissioner maintains that the ALJ properly considered the medical evidence in the administrative record, including the treatment notes and opinion of NP Frosch. Having reviewed the record, it is clear that the ALJ appropriately considered Dawson's mental health issues and the treatment notes and opinion of NP Frosch, and factored those concerns into the disability calculus. As such, the ALJ's decision is supported by substantial evidence. Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, that the Commissioner's Motion for Summary Judgment (Dkt. #19) be **GRANTED**, and Dawson's Motion for Summary Judgment (Dkt. #14) be **DENIED**.

# I

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Social Security Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "'Under the Social Security Act, [a reviewing court] must uphold the factual findings of the [ALJ] if they are supported by substantial evidence and were reached through application of the correct, legal standard.'" Id. (alteration in original) (quoting Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996)). "Although we review the [Commissioner's] factual findings only to establish that they are supported by substantial evidence, we also must assure that [his] ultimate conclusions are legally correct." Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980).

The court may neither undertake a de novo review of the Commissioner's decision nor re-weigh the evidence of record. Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992). Judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to satisfy the Act's entitlement conditions. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Evidence is substantial when, considering the record as a whole, it might be deemed adequate to support a conclusion by a reasonable mind, Richardson v. Perales, 402 U.S. 389, 401 (1971), or when it would be sufficient to refuse a directed verdict in a jury trial. Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Substantial evidence is not a "large or considerable amount of evidence," Pierce v. Underwood, 487 U.S. 552, 565 (1988), but is more than a mere scintilla and somewhat less than a preponderance. Perales, 402 U.S. at 401. If the Commissioner's decision is supported by substantial evidence, it must be affirmed. 42 U.S.C. § 405(g); Perales, 402 U.S. at 401.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The "[d]etermination of eligibility for social security benefits involves a five-step inquiry." Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). This inquiry asks whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his or her past relevant work; and if not, (5) whether he or she can perform other work. Heckler v. Campbell, 461 U.S. 458, 460-462 (1983); Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"),[1] considering the claimant's age, education, work experience, and impairments, to perform alternative work that exists in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

---

[1] RFC is a measurement of the most a claimant can do despite his or her limitations. See 20 C.F.R. § 404.1545(a). According to the Social Security Administration:

> RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule.

Social Security Regulation (SSR) 96-8p. RFC is to be determined by the ALJ only after considering all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain). See 20 C.F.R. § 404.1529(a).

II

Dawson was 46 years old on the date of the ALJ's decision, March 4, 2009. She graduated from high school and completed a year of college study. Dawson worked as a Certified Nursing Assistant ("CNA") from 1988 to 2006, but left that job after she hurt her back while trying to move a patient. Dawson testified that she was unable to work after January, 2006 due to lower back pain, severe major depression, generalized anxiety disorder, fibromyalgia, chronic fatigue and high blood pressure. (Administrative Record, hereinafter "R." at 31.)

Dawson filed an application for benefits on May 9, 2007, claiming disability as of January 24, 2006 based on anxiety, depression, back pain, hip and leg problems, degenerative joint disease, osteoporosis, migraine headaches, hypertension, carpal tunnel syndrome, fibromyalgia and irritable bowel syndrome. (R. 108.) Dawson's application for benefits was rejected by the Commissioner initially based on a medical records reviews by Dr. Frank Johnson on July 23, 2007 (physical), and E. Hugh Tenison, Ph.D., on July 23, 2007 (mental). (R. 319-342.) This decision was confirmed on reconsideration based on medical records reviews by Dr. Richard Surrusco on October 11, 2007 (physical), and Julie Jennings, Ph.D., on October 11, 2007 (mental). (R. 371-380.) An administrative hearing was held on December 10, 2008 before an ALJ, at which Dawson was represented by counsel. (R. 25-44.)

In a decision issued on March 4, 2009, the ALJ found that Dawson had severe impairments consisting of lumbar degenerative disc disease, possible fibromyalgia, history of asthmatic bronchitis and an affective disorder. (R. 14.) Considering these impairments, the ALJ found that Dawson retained the RFC to perform light, unskilled work that does not require maintaining concentration for extended periods of time. (R. 20.) The ALJ determined that Dawson has "adequate mental functioning to perform simple repetitive tasks on a regular basis in

a low stress work environment." (R. 20.) Because Dawson's past relevant work as a CNA requires a heavy to medium level of exertion, the ALJ found her to be incapable of returning to her past work. (R. 22.) Relying on the testimony of a Vocational Expert ("VE"), the ALJ found that Dawson could perform a range of light work that existed in significant numbers in the national economy, including such jobs as a home companion, receptionist, and telephone solicitor. (R. 23.) Accordingly, the ALJ concluded that Dawson is not disabled under the Act. (R. 23.) The Appeals Council denied Dawson's request for review on September 9, 2009 and this appeal followed. (R. 1-4.)

### III

Dawson argues on appeal that she is disabled by her mental impairments, and that the ALJ erred by giving little weight to the opinion of her treating NP, Juliana Frosch. The earliest medical reference in the administrative record to mental health issues is a Central Virginia Community Services ("CVCS") Admission Data Form dated March 27, 2006, at which time Dawson presented with moderate anxiety and depression and mild panic disorder. (R. 225.) To the extent legible, a psychiatric examination dated June 13, 2006 diagnosed Dawson with major depressive disorder and generalized anxiety disorder and determined her Global Assessment of Functioning ("GAF") level to be 50.[2]

Following the filing of her disability application, the state agency arranged for Dawson to be examined by a physician, Dr. Thomas Dobyns, who completed a Medical Consultant Report

---

[2] The Global Assessment of Functioning, or GAF, scale ranges from 0 to 100 and considers psychological, social and occupational functioning on a hypothetical continuum of mental health illness. Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. Text Rev. 2000) (hereinafter "DSM-IV-TR"). A GAF of 41-50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). DSM-IV-TR at 34.

5

on July 15, 2006. Dr. Dobyns' report opens with an assessment of her depression, which she considered to be her "number one problem." (R. 247.) Dr. Dobyns' report states as follows:

> The patient is a 43-year-old woman who says that her number one problem is depression. It was diagnosed in 06/99. She has been on Lexapro for four-and-a-half years. She says she is 80% improved now. When asked how her depression keeps her from being able to work, she could not answer that question. I asked her at least twice. Therefore, I assume that it is not a disabling problem for herself any longer. She goes to counseling and to see a psychiatrist. She does have some panic and panic-related disorder but it also appears not to be controlling her at this time according to her responses to myself.

(R. 247.) Dr. Dobyns also assessed Dawson's claimed physical impairments, including back and hip pain, asthma, irritable bowel syndrome, hypertension and carpal tunnel syndrome. He found Dawson's back to be non-tender with a normal range of motion. He also found her shoulders, elbows, wrists and hands to have a normal range of motion. Based on his examination and assessment, Dr. Dobyns concluded that Dawson should be able to "sit all eight hours of a standard workday. I have no physical findings now of the time that she cannot. I believe she should be able to stand four to six hours of a standard workday." (R. 250.)[3] As to her mental status, Dr. Dobyns found her "to be alert and oriented in all spheres and by her own estimate is 80% improved as depression is concerned." (R. 251.)

Dawson began seeing NP Frosch on October 24, 2006, complaining of depression, anxiety and panic in crowds due to multiple stressors, including the loss of her mother and boyfriend's serious illness. (R. 203.) NP Frosch started Dawson on an antidepressant medication, which over the next few months helped improve her symptoms. (R. 197, 200.) In January, 2007, Dawson reported that the medication helped her mood, but that her relationship

---

[3] There are no medical opinions in the record stating that Dawson is physically unable to perform any work, and the appeal in this case focuses exclusively on her mental health and the opinion of her treating nurse practitioner Juliana Frosch.

6

with her daughter was her only interaction. (R. 192.) The next medical record referencing Dawson's depression was from September, 2007, when she was seen in follow up by NP Frosch. At that time, NP Frosch categorized her condition as being moderate recurrent depression. (R. 409.) On October 23, 2007, Dawson asked NP Frosch to change her medications so that she could be prescribed Lortab for her pain. (R. 404.) NP Frosch noted that Dawson's affect and mood were depressed and changed her medication as requested. (R. 404-405.) On November 13, 2007, Dawson felt "outside of her body," and NP Frosch restarted the anti-panic medication tapered during the previous month. On this visit, NP Frosch rated her depression as severe. (R. 402.) A month later, on December 12, 2007, Dawson related that she had calmed down a bit and that her anxiety was somewhat improved. Again, her depression was assessed by NP Frosch as severe. (R. 392.) Dawson was seen again in January and February, 2008 by NP Frosch, who noted no significant change in her mood and functioning. During both visits, NP Frosch deemed Dawson's depression to be moderate and noted that she perseverates on her boyfriend's serious illness. (R. 390, 394.) Dawson's medical records are consistent throughout 2008, as she continued to focus on the deteriorating health of her boyfriend, who was placed in a nursing home, and her own somatic health complaints. Adding to her stress in late 2008 was a serious neck injury to her brother. (R. 421, 426, 428, 434, 438.)

The administrative record contains a letter from a friend of Dawson addressing Dawson's deep depression, increasing panic attacks and feelings of absolute and total helplessness. Dawson's friend thought that her medications did little to help with her mental state and opined that "[t]here is absolutely no way that she could hold down a job at the present time." (R. 171.)

On December 12, 2007, NP Frosch completed a Medical Source Statement of Ability To Do Work-Related Activities (Mental). (R. 387-388.) The form asks the medical source to assess Dawson's ability to perform a number of work-related tasks, grouped in two general categories dealing with her ability to carrying out instructions and responding to supervision, co-workers and work pressure. In the area of her ability to carry out instructions, NP Frosch reported that Dawson fell into the "Fair" category for most tasks. The form defines "Fair" as "[t]he individual can perform the activity satisfactorily some of the time." NP Frosch rated Dawson "Poor" in four categories: Remember locations and work-like procedures; Maintain attention and concentration for extended periods; Complete a normal workday or workweek; Perform at a consistent pace. (R. 387.) A rating of "Poor" is defined as reflecting "[n]o useful ability to function." NP Frosch wrote at the bottom of the page that "Patient reports poor concentration, daily depressed mood, severe social withdrawal." In the second generalized category, that of responding to supervision, co-workers and work pressures, Dawson's scores were consistently higher, all but one in the "Fair" or "Good" range. A rating of "Good" on this form means "[t]he individual can perform the activity satisfactorily most of the time." The one area in which Dawson received a poor rating was in the area of travel in unfamiliar places or use public transportation. NP Frosch was asked on the form to note the medical/clinical findings that supported this assessment, and she wrote simply: "Subjective report. Anxious and depressed affect. Perseverates on depressed mood and stressors." (R. 388.)

State agency psychologist E. Hugh Tenison, Ph.D., performed a Mental RFC Assessment and Psychiatric Review Technique on July 23, 2007, considering Dawson's medical records through February, 2007. (See R. 338.) Dr. Tenison determined that Dawson suffered from major depression and generalized anxiety disorder, posing a moderate limitation in her ability to

maintain concentration, persistence or pace, but found she had only mild limitations in her activities of daily living, no limitation in her ability to maintain social functioning, and no repeated episodes of decompensation. (R. 329, 331, 336.) Dr. Tenison summarized the medical records he had reviewed and concluded that the "evidence documents no significant limitations of the claimant's work-related mental abilities." (R. 339.) In his Mental RFC Assessment, Dr. Tenison noted a number of areas where Dawson was moderately limited, but no areas where she was markedly limited. (R. 340-341.)

State agency psychologist Julie Jennings, Ph.D., reconsidered Dr. Tenison's assessment on October 11, 2007, and concluded consistently as follows: "There are no additional MERs concerning her mental status. She is treated medicinally. And prior records reveal that she can think, reason and act in her interest. This would seem to endorse her capacity for simple and unskilled work." (R. 370.) Neither Dr. Tenison nor Dr. Jennings was able to review NP Frosch's Medical Source Statement, as it was completed in December, 2007.

The ALJ must provide reasons for giving a treating source's opinion certain weight or explain why he discounted a specific opinion. 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion."); Social Security Ruling ("SSR") 96-2p ("[T]he notice of determination or decision must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."); see also Kratzer v. Astrue, No. 5:07cv00047, 2008 WL 936753, at *7 (W.D. Va. 2008) (noting the ALJ is expressly obligated to explain the consideration given to his opinions). A treating physician's opinion is to be given controlling

weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001) ("[A] treating physician's opinion on the nature and severity of the claimed impairment is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."); 20 C.F.R. § 404.1527(d)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations...."); SSR 96-2p.

However, social security regulations do not allow the opinion of Frosch, a nurse practitioner, to be accorded controlling weight, as a nurse practitioner is not considered an acceptable medical source. See 20 C.F.R. § 404.1513(a). Rather, evidence from a nurse practitioner may be used to show the severity of an impairment and how it affects one's ability to work. See 20 C.F.R. § 404.1513(d).

In this case, the ALJ carefully considered Dawson's mental health issues, including review of her medical records and the opinions of treating NP Frosch, consultative examining physician Dr. Dobyns, and the two state agency psychologists, Tenison and Jennings. The ALJ took into account Dawson's non-exertional capabilities in fashioning her RFC, as he restricted her to unskilled work that does not require maintaining concentration for extended periods of time. He concluded that she has adequate mental functioning to perform simple repetitive tasks on a regular basis in a low stress work environment. (R. 20.) Review of the ALJ's decision, particularly page 19, makes it clear that he studied Dawson's medical records. The ALJ noted

that NP Frosch intermittently gauged Dawson's depression as moderate, and her treatment notes did not indicate frequent increases in medications or the need for psychiatric intervention. Dawson reported to Dr. Dobyns that medication improved her symptoms by 80%. The ALJ noted that Dawson "has no history of psychiatric hospitalization and has not been shown to have marked or extreme limitations in daily activities, social functioning, or maintaining concentration/persistence/pace due to mental symptoms. She takes prescribed medication and participates in psychotherapeutic counseling, but has not required regular follow-up with a psychiatrist, as would be expected if symptoms were not responding adequately to treatment." (R. 19.) The ALJ also noted that the activities of daily living listed on her function report demonstrate an ability to function independently outside of her home. (R. 19-20.) The ALJ concluded as follows:

> Despite alleging significant mental limitations, the claimant sees only a nurse practitioner for counseling and medications and has not required ongoing treatment by a psychiatrist. Further, she reports that she enjoys reading for long periods, which is inconsistent with complaints of poor concentration. The limited degree of treatment required, relatively benign examinations, and minimal objective findings of significant abnormality belie allegations of disabling symptoms or functional limitations.

(R. 21.)

Although the ALJ did not accept the opinion of NP Frosch, he expressly considered her treatment notes and functional assessment. Given the functional assessments of the state agency psychologists, the undersigned cannot conclude that the decision reached by the ALJ is not supported by substantial evidence. Indeed, the ALJ carefully considered all of the evidence in the record and the opinions as to Dawson's functional abilities and reached a reasoned decision consistent with the evidence and the regulations. That a court may reach a different judgment is not ground for reversal and would usurp the administrative process. Because substantial

evidence supports the ALJ's decision, the undersigned must recommend that the administrative decision of the agency by affirmed.

It is abundantly clear that the ALJ expressly considered the treatment notes and opinions of Dawson's treating sources and sufficiently explained the weight accorded to them in the decision. The conclusion reached by the ALJ follows the regulatory framework, is consistent with the entirety of the administrative record and is supported by substantial evidence. On this record, there is no basis for reversal of the Commissioner's decision in this case.

## IV

Dawson also argues that the ALJ's decision runs contrary to the opinion of the Vocational Expert Gerald Wells, who testified there are no jobs available in the national economy that a person having the characteristics found in NP Frosch's opinion could perform on a sustained basis. To be sure, Dr. Wells testified that if one accepts the assessment performed by NP Frosch, Dawson had no useful ability in the areas of remembering locations and work-like procedures, maintaining attention and concentration, completing a workday and traveling. Such a person could not work a normal workday and do full-time, gainful, competitive activity. (R. 42.) However, the VE also testified that there were jobs that a person having the physical and mental characteristics identified in Dr. Dobyns' report could perform. The ALJ founded his decision on the assessment of consulting examining physician Dr. Dobyns, the assessments of the state agency psychologists, a review of Dawson's medical records, and Dawson's own statements as to her daily activities and how her mental health symptoms improved with medication. The VE testified that there were jobs that a person with the impairments identified in Dr. Dobyns' consultative examination report could perform. (R. 40.) Certainly, the ALJ could have decided to accept NP Frosch's opinion and render a disability determination. But the ALJ

did not believe, based on a review of all of the evidence and an opportunity to evaluate the testimony of Dawson herself, that such a decision was warranted. It is not the province of a reviewing court to re-weigh the evidence. On this record, and considering the limits of the court's substantial evidence review, the undersigned recommends that the Commissioner's decision be affirmed.

At the end of the day, it is not the province of the reviewing court to make a disability determination. It is the court's role to determine whether the Commissioner's decision is supported by substantial evidence and, in this case, substantial evidence supports the ALJ's opinion. In affirming the final decision of the Commissioner, the undersigned does not suggest that Dawson is free from stress. Certainly, she has multiple sources of stress in her life, including those associated with her physical health condition and issues regarding her family members and boyfriend. However, the ALJ carefully considered and accounted for Dawson's mental condition in the disability decision, and that decision is plainly supported by substantial evidence. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability from all forms of substantial gainful employment.

Accordingly, it is **RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, defendant's motion for summary judgment (Dkt. # 19) be **GRANTED**, and plaintiff's Motion for Summary Judgment (Dkt. #14) be **DENIED**.

The Clerk is directed to transmit the record in this case to Norman K. Moon, Senior United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any

adjudication of fact or conclusion of law rendered herein by the undersigned that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1)(C) as to factual recitations or findings as well as to the conclusion reached by the undersigned may be construed by any reviewing court as a waiver of such objection.

Entered: January 27, 2011.

/s/ Michael F. Urbanski

Michael F. Urbanski
United States Magistrate Judge